[Sac. No. 7979. In Bank. Dec. 3, 1973.]

MAXWELL M. WILLENS, Plaintiff and Respondent, v.
COMMISSION ON JUDICIAL QUALIFICATIONS et al.,
Defendants and Appellants.

## COUNSEL

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and William J. Power, Deputy Attorneys General, for Defendants and Appellants.

Buchalter, Nemer, Fields & Savitch, Benjamin E. King, Earl P. Willens and Arthur G. Spence for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—In this case we review applicable constitutional and statutory provisions to determine under what circumstances a judge, formally charged with a criminal offense, may apply for and receive disability retirement benefits. We conclude that the filing of criminal charges against a judge does not suspend his right to receive a disability retirement, if the requisite disability is shown. We also conclude that such a judge does not forfeit his disability benefits upon conviction and suspension or removal from office.

Plaintiff Willens served as a judge of the Municipal Court of the Stockton Judicial District, County of San Joaquin, from 1962 to 1968 when he was elevated to the superior court of that county. In February 1970 he presented himself as a candidate for reelection for a six-year term commencing January 4, 1971, and was unopposed in the primary election. On June 11, 1970, plaintiff was indicted by the Grand Jury of San Joaquin County on charges of criminal conspiracy and bribery. As a result of this indictment, Willens became automatically disqualified from acting as a judge by reason of article VI, section 18, subdivision (a), of the California Constitution.[1]

At the general election on November 3, 1970, Willens was defeated by a write-in candidate. By letter of the same date, addressed to the Commission on Judicial Qualifications and the chief justice of this court, Willens requested to be retired pursuant to section 75060 of the Government Code,[2]

---

[1]Section 18, subdivision (a), of article VI provides that "A judge is disqualified from acting as a judge, *without loss of salary,* while there is pending (1) an indictment or an information charging him in the United States with a crime punishable as a felony under California or federal law, or (2) a recommendation to the Supreme Court by the Commission on Judicial Qualifications for his removal or retirement." (Italics added.) With respect to a *convicted* judge, subdivision (b) of section 18 provides that the Supreme Court "may suspend a [convicted] judge from office without salary . . . . If his conviction is reversed suspension terminates, and he shall be paid his salary for the period of suspension. If he is suspended and his conviction becomes final the Supreme Court shall remove him from office."

Subdivisions (c), (d) and (e) of section 18 set forth additional provisions regarding the forced retirement or removal of judges, provisions not at issue in this case.

[2]Section 75060, subdivision (a), provides that "Any judge who is unable to discharge efficiently the duties of his office by reason of mental or physical dis-

on the basis of an alleged inability to discharge efficiently the duties of his office by reason of physical and mental disability likely to become permanent. Willens was 61 years of age at the time of his request for retirement; attached to his letter were supporting medical affidavits as required by section 75060.[3] Under section 75060.6, a judge retired pursuant to section 75060 shall receive a lifetime allowance equal to one-half of the salary payable for the judicial office he held.

By letter dated December 18, 1970, the commission refused plaintiff's request for retirement, stating in part: "The judge is not eligible for disability retirement since his inability to serve is by reason of his disqualification under article VI, section 18a of the California Constitution. It is the view of the Commission that disability benefits are not available to a judge who is prevented by operation of law from performing his judicial duties, wholly aside from and regardless of his physical condition. The Commission also questions whether the permanency of the disability has been adequately established since the medical condition appears connected with emotional stresses arising from circumstances which will be disposed of rather soon."

On April 16, 1971, plaintiff sought a writ of mandate in the Sacramento County Superior Court to compel the commission and the chief justice

---

ability that is or is likely to become permanent may, with his consent and with the approval of the Chief Justice or Acting Chief Justice and the Commission on Judicial Qualifications, be retired from office. The retirement shall be effective upon approval by the designated officers, except as provided in subdivision (b) of this section [pertaining to judges who die after applying for retirement]. A certificate evidencing such approval shall be filed with the Secretary of State. Upon the filing of the certificate, a successor shall be appointed to fill the vacancy." Subdivision (c) of section 75060 requires the submission of a written statement by a physician or psychiatrist that he has examined the judge and is of the opinion that the judge is unable to discharge effectively his duties by reason of a mental or physical disability that is, or is likely to become, permanent. Willens complied with this requirement, submitting statements by a neurosurgeon, a psychiatrist and an internist regarding his disability.

[3]See footnote 2, *ante*. The statement of Dr. Golden, a neurosurgeon, reported that Willens had undergone an operation in 1970 to relieve a spinal cord compression in the neck that had been causing progressive spastic weakness of the legs and feet. Willens' condition, which is not likely to improve, has resulted in a "moderately stiff and unsteady" gait which causes staggering, a tendency to fall, and fatigue. The condition prevents Willens from working a full day and leads to further anxiety.
Dr. Caul, an internist, submitted a report diagnosing Willens' various neurological and cardiovascular problems, including hypertension, hypertensive arterial sclerotic heart disease, probable cerebrovascular disease and paraxysmal atrial fibrillation. Dr. Suarez, a psychiatrist, outlined Willens' memory impairment and various other deficits in mental and emotional functions. All three doctors concluded that Willens was mentally and physically disabled and unable to function efficiently as a judge and the trial court so held.

to approve his request for disability retirement. On December 17, 1971, following a trial of the matter, the court issued mandate as requested.[4] Defendants appeal.

The trial court, following a trial at which extensive medical testimony was heard, found that at the time Willens applied for a disability retirement he was "unable to discharge efficiently the duties of a Judge of the Superior Court by reason of both physical and mental disabilities which were permanent or likely to become permanent" and that "[s]uch disabilities resulted from physical and mental illnesses which continuously existed from a period commencing no later than the end of 1969." Although defendants challenge the substantiality of the evidence supporting the foregoing findings,[5] it is apparent that substantial evidence was introduced in support thereof. Dr. Golden, a neurosurgeon, who personally operated upon Willens in January 1970 testified that Willens had a serious and incurable case of cervical spondylosis, causing Willens to stagger and lurch at times and nearly fall, with accompanying pain in the legs, feet, neck and back, and that this condition interfered with his ability to remember and concentrate. Dr. Suarez, a psychiatrist, stated that Willens also suffered from mental illness and an organic brain syndrome impairing his mental and emotional functioning. Dr. Rand, a neurosurgeon selected by defendants, confirmed that Willens' spondylosis resulted in a "burning" pain and distracted him from his current judicial duties. Dr. Rand's report recommended that Willens be retired. Defendants failed to call any medical experts to contradict the foregoing evidence.

Thus, we conclude that Willens has established the principal statutory prerequisite to a disability retirement. (See Gov. Code, § 75060, fn. 2, *ante*.) Defendants' primary contention is that section 75060 contains an additional, unexpressed condition to a judge's right to a disability retirement, namely, that at the time his application is filed he be otherwise qualified to act as a judge. Defendants argue that since Willens was disqualified from acting as a judge by reason of the then pending indictment (Cal. Const., art. VI, § 18, subd. (a)), his mental and physical disability

---

[4]In the meantime, on June 23, 1971, Willens was found guilty on four counts of bribery; his conviction, entered December 6, 1971, is now final.

[5]Defendants belatedly assert that the trial court improperly conducted a "de novo" trial on the question of Willens' right to a disability retirement, rather than simply determining whether the commission's decision denying retirement was based upon substantial evidence in the record. (See Code Civ. Proc., § 1094.5.) Yet at trial defendants evidently made no objection to the scope of the proceedings and indeed concurred with the court's ruling that since no administrative hearing had been held, no "record" existed, and consequently the proceeding was more in the nature of the ordinary mandate action (Code Civ. Proc., § 1085).

was not the *sole* cause for his inability to discharge his judicial duties. As stated by defendants, "The section [75060] presupposes that, except for the disability, the judge would be performing the duties of his position. Such is not the case here."

We find no clear legislative intent, however, to preclude an indicted judge from applying for, and receiving, a disability retirement; section 75060 by its terms is extended to "any judge" who suffers from the requisite mental or physical disability. Prior cases have instructed us to construe liberally pension legislation to the end that the beneficent results thereof may be achieved. (*Gorman* v. *Cranston,* 64 Cal.2d 441, 444 [50 Cal.Rptr. 533, 413 P.2d 133], construing the Judges' Retirement Law.) Given the evident purpose of section 75060 to protect a disabled judge and his dependents from economic insecurity through loss of salary, we cannot assume that the Legislature intended to deprive a disabled judge of the benefits of a disability retirement solely because he had been charged but, up to that time, had not been convicted of a criminal offense. To so hold, we submit, would ignore the fundamental precept that an accused is presumed innocent until proven guilty.

Contrary to defendants' position, the applicable constitutional provisions reinforce our construction of section 75060. ■ Those provisions declare that a judge charged by information or indictment with a felony offense "is disqualified from acting as a judge, *without loss of salary,"* during the pendency of those charges. (Italics added; Cal. Const., art. VI, § 18, subd. (a).) As applied to a disabled judge, the term "salary" reasonably may be deemed to include the retirement benefits payable in lieu of salary under the provisions of the Judges' Retirement Law.[6]

■ Moreover, section 18 of article VI discloses no intent to preclude a disabled judge from obtaining retirement benefits. That section quite clearly was enacted to protect the public and preserve the integrity of the judicial office pending resolution of criminal charges, rather than punish financially an indicted judge; the section does not purport to remove such a judge from his office. In fact, under subdivision (b), even a *convicted* judge, subject to the discretion of the commission or this court, may retain his office and salary until his conviction becomes final.

---

[6]Several cases have held that retirement or pension benefits are a form of deferred compensation or "salary" paid to an employee in consideration for his services. (See *Skaggs* v. *City of Los Angeles,* 43 Cal.2d 497, 503 [275 P.2d 9]; *Wallace* v. *City of Fresno,* 42 Cal.2d 180, 184-185 [265 P.2d 884]; cf. Gov. Code, § 75003.) And under the Judges' Retirement Law, the retirement benefits to be paid to a disabled judge pursuant to section 75060 are measured by the judge's salary.

To accept defendants' interpretation of the foregoing provisions. could lead to anomalous and unjust results. A healthy judge, facing a felony charge, could continue to receive his normal salary pending final disposition of the charge, whereas a disabled but indicted judge whose disability contributed to his defeat for reelection, would receive neither a salary nor retirement benefits, at least until the charge was dismissed or disproved.[7]

Defendants contend that Willens' interpretation of section 75060 would conflict with the provisions of section 75060.6 which require termination of disability benefits upon recovery and refusal to accept judicial assignment.[8] That section provides that if a judge recovers his health prior to ordinary retirement age (65), he must make himself available for additional judicial duties, and that his retirement allowance terminates if he "refuses" such duties. A convicted or removed judge receiving retirement benefits would not, of course, be available to perform such duties. Yet this provision does not necessarily conflict with section 75060 as we have construed it, for a convicted or removed judge may be deemed to have "refused" to perform judicial duties by reason of acts of misconduct which directly resulted in his disqualification. Therefore, upon his recovery from disability prior to retirement age, the provisions of section 75060.6 would apply and the retirement allowance would cease.

The provisions of section 75060.6 do, however, raise the further question whether a disabled judge should continue to receive disability benefits once he has been convicted and either suspended or removed from office. Although the parties have not briefed this question, it will necessarily arise in this case, for in fact Willens' conviction has become final. To avoid additional unnecessary litigation in this case, we decide the issue at this time.

---

[7]In the instant case, Willens subsequently lost the right to continue to receive a salary by virtue of his failure to gain reelection.

[8]Section 75060.6 provides, in pertinent part, as follows: "The Commission on Judicial Qualifications, in its discretion, and from time to time, may require any judge who is receiving an allowance under this section and who is under the age of 65 years to undergo medical examination. Such examination shall be made by one or more physicians or surgeons, appointed by the Commission on Judicial Qualifications, at the place of residence of the judge or other place mutually agreed upon. Upon the basis of such examination the commission shall determine whether he is still incapacitated, physically or mentally, for service as a judge. If the commission determines, on the basis of the results of such medical examination, that he is not so incapacitated, he shall be a judicial officer of the State, but shall not exercise any of the powers of a justice or judge except while under assignment to a court by the Chairman of the Judicial Council. The allowance of such judge shall cease if he refuses an assignment while he is not so incapacitated."

It could be argued that since disability benefits under section 75060 are in lieu of a salary, and since a convicted judge forfeits his right to a salary once his conviction has become final and he is removed from office (art. VI, § 18, subd. (b)), Willens' right to in lieu salary benefits likewise should terminate. It may appear unwise and contrary to public policy, under the circumstances of a particular case, to permit a convicted and removed judge to retain a *lifetime* (see § 75060.6) retirement pension solely by reason of a fortuitous, pre-existing disability. Yet neither section 75060 nor any other provision of the Judges' Retirement Law expressly provides for the forfeiture of retirement benefits by reason of a subsequent conviction.[9] Section 75060.6 sets forth the only express condition to continuation of disability benefits, namely, that such benefits cease if a judge recovers from his disability, prior to retirement age, but refuses a judicial assignment. Furthermore, it is quite possible that, after years of faithful service, a judge's illness, disease or other disability might induce him to commit a felony offense, or at least be a contributing factor in its commission. It seems unjust to deprive him, and his dependents, of earned pension benefits under such circumstances.

▮ Since pension rights of this nature may be considered "vested" rights (*Pearson* v. *County of Los Angeles,* 49 Cal.2d 523, 543 [319 P.2d 624]; *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131 [287 P.2d 765]; *Wallace* v. *City of Fresno, supra,* 42 Cal.2d 180, 183 [265 P.2d 884]), the following rule would appear to govern: "In the absence of a valid . . . provision enacted prior to eligibility for retirement which provides for forfeiture, once a person who has undertaken public employment . . . becomes eligible for retirement, his right to a pension cannot be destroyed merely because he is subsequently removed from office for his own misconduct. [Citation.] It is statutory law that 'No conviction of any person for a crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law . . . .' (Pen. Code, § 2604.)"

---

[9]Note that in 1971, effective March 4, 1972, Government Code section 75033.1 was enacted to provide that "Any judge who is removed from office by the Supreme Court shall not receive any of the benefits provided by Section 75033. The amount of his accumulated contributions shall be paid to him by the State Controller. [¶] This section shall be applicable only to a person who becomes a judge after the effective date of this section."

Section 75033 allows a judge whose service has terminated prior to retirement age (for reasons other than death, resignation, recall, impeachment or retirement) to elect to leave his accumulated contributions in the fund and, upon attaining age 65, to receive a specified retirement allowance. Neither section 75033 nor 75033.1 pertains to the matter of disability retirement benefits payable under section 75060.

(*Pearson* v. *County of Los Angeles, supra,* at p. 543.) We conclude that Willens is entitled to a disability pension for the remainder of his life or until he recovers from his disability.

Having concluded that Willens is entitled to the benefits of section 75060, we need not reach his further contention that a contrary interpretation of that section would result in an unconstitutional forfeiture of previously vested rights.[10]

The judgment granting mandate to compel defendants to approve Willens' request for a disability retirement is affirmed.

Tobriner, Acting C. J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J.,* concurred.

---

[10]Defendants content that the trial court erred in ordering the chief justice of this court to approve Willens' request for a disability retirement. Defendants point out that the chief justice had referred Willens' request to the commission without personally acting upon that request when the proceedings were initiated in the trial court. However, the record indicates that the Attorney General appeared in the trial court proceedings on behalf of both the commission and the chief justice and litigated the matter on behalf of both defendants. Accordingly, no purpose would be served in providing for a resubmission of Willens' application to the chief justice. Moreover, in his petition for mandate, Willens alleged that he had exhausted "all available remedies" required to be pursued by him; defendants (including the chief justice) failed to deny this allegation in their answer and may be deemed to have admitted the same.

*Assigned by the Chairman of the Judicial Council.