Filed 9/2/20  Marriage of Stupp and Schilders CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of STEVEN STUPP and ANNEMARIE SCHILDERS. | |
| STEVEN STUPP,<br><br>        Respondent,<br>v.<br>ANNEMARIE SCHILDERS,<br><br>        Appellant. | A156022<br><br>(San Mateo County<br>Super. Ct. No. FAM0110799) |

Appellant Annemarie Schilders (Mother) appeals from postjudgment orders that modify temporary orders governing her visitation with her child. She claims that an order suspending visitation while she is out of the country is appealable as a final order, a postjudgment order, and/or an order granting an injunction, and that two related orders are appealable as orders granting injunctions. Respondent Steven Stupp (Father) has moved to dismiss the appeal on the grounds the orders are not appealable. We agree with Father and conclude that none of the orders is an injunction for purposes of appeal, and that the order suspending visitation is a nonappealable postjudgment temporary visitation order. Accordingly, we dismiss the appeal.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The orders challenged in this appeal were issued in proceedings concerning the dissolution of the parties' marriage and the custody of their child, who is now 10 years old. The underlying case, which has been pending in the family court since shortly after the child's birth, has been highly contentious: as of March 2019 the register of actions extended to 161 pages, and since June 2014, when Mother appealed the entry of a stipulated judgment of dissolution, Mother has initiated appeals from many postjudgment orders and submitted several writ petitions.[1]

The 2014 stipulated judgment of dissolution, as modified by the family court and affirmed by this court, included a temporary custody and visitation order. (*Stupp v. Schilders* (Mar. 25, 2016, A142302) [nonpub. opn.].) The family court eventually issued further, postjudgment temporary custody and visitation orders, some of which Mother has sought to appeal. We have dismissed those appeals on the grounds that such orders are not appealable. (See, e.g., *Stupp v. Schilders* (May 18, 2017, A144762) [nonpub. part of par. pub. opn.].) Custody and visitation have remained subject to temporary orders, as Mother acknowledges.

A.    *Mother's Request for Temporary Orders and Father's Responses*

In March 2018, Mother filed a request for temporary orders concerning visitation.[2] According to the request, under the existing temporary visitation

---

[1] This court has previously issued opinions resolving 13 appeals from the underlying case.

[2] Custody of the child is not at issue in this appeal. Mother represents that she and Father share joint physical custody of the child subject to temporary custody orders. She states that a hearing on a final custody order was scheduled in November 2015 but did not take place and was never rescheduled. She does not elaborate.

order the child spent time with Mother each Friday from school pickup at 1:25 p.m. until at least 6 p.m. On alternate weeks, visitation with Mother extended overnight, until Saturday at 6 p.m. Under the requested modification, to last while Mother "is out of the country," the child would communicate with Mother (presumably by phone or video chat) at least once per week for an hour and a half. Further, "[f]or the time with his mother, the child shall be exchanged to and from Alfred Lerner at the San Carlos public library. The child will have his communications with his mother while accompanied by Alfred Lerner. [Father] is prohibited from recording in any way, directly or indirectly, the child during the scheduled times." The request was supported by a declaration dated March 8, 2018 from Mother's attorney, who stated as follows: "I believe and am informed that the child will suffer imminent emotional harm if he is prevented from having communications with [Mother] while she is out of the country. I believe and am informed [the] child has a strong relationship with and has had an established schedule of spending a substantial amount of time with her every week. My knowledge is based, in part, on the admissions of [Father], the comments of the child's therapist, testimony given in this case, and the past court orders. [¶] Dr. Alfred Lerner is a friend of [Mother]. He has participated in the exchanges of the child many times. I have personal knowledge of this based on observation and the admissions of the parties. [Mother] informed me that she has travelled to and is presently in the Netherlands. I have personal knowledge of this because I received communication directly from her."

Father opposed Mother's request in his March 2018 responsive declaration to her request for order. Father stated that he would consent to making the child available each weekend for a one-hour Skype call with

3

Mother, to be facilitated from Father's home, which was the child's primary residence. Father did not agree to the child being in Lerner's care for any purpose, and requested that the child's "time with [Mother], even if she returns to California, is suspended, aside from the weekly Skype calls, pending a Brief Focused Assessment or a Child Custody Evaluation." Father further stated that, pursuant to a previous temporary order, he had facilitated weekly Skype calls between Mother and the child for a period of about 5 months in 2016, while Mother was out of the country.

The matter was set for a hearing in May 2018.

In April 2018, Father submitted further declarations to the court in response to Mother's request for order. He stated that Mother had no contact with the child for 8 weeks, from early March to late April, and that as far as he knew Mother had made no effort to contact him to schedule contact with the child or inquire about the child's well-being. Father withdrew his offer to arrange for Skype calls between Mother and the child, and instead requested that the court suspend Mother's visitation pending further court order, so that the court would have the opportunity to gather more information, including information from the child's therapist, to determine whether contact between Mother and the child would be appropriate.

B. *Hearing and Order*

The court held an evidentiary hearing on the conflicting requests over two days in May and June 2018 and announced its findings and orders from the bench. The court found that Mother had not exercised her custodial time with the child under the existing visitation order for a period of 15 weeks, that the child had no contact with Mother during that period, and that the lack of contact caused the child distress. The court concluded that in those

4

circumstances, Mother's requested orders for Skype contact were not in the child's best interest and denied Mother's request.[3]

The court granted Father's request to suspend visitation between Mother and the child until further order of the court. The court conditioned resumption of visitation on a court order "based on a noticed pleading filed by either of the parties seeking to change visitation so that the Court has the opportunity to reevaluate the circumstances with testimony and evidence from the parties as to any relevant circumstances as to why it would be in the child's best interest to change the Court's temporary [suspension] of visitation." The court also ordered that before the resumption of any visitation, Mother was to "disclose to the Court through a noticed pleading either the fact that she has returned or that she intends to return."

---

[3] In denying Mother's request, the court stated that it was not in the child's best interest to have contact with Mother that was supervised by Lerner, "an individual who, according to testimony offered in this hearing . . . has been previously involved in this litigation and in conflict with [Father] in particular, who is the custodial parent." At the end of the hearing, Mother's counsel suggested that the court allow communication between Mother and the child that was facilitated by a professional custody or exchange supervisor, rather than by Lerner. The court responded that when Father had offered to facilitate calls between Mother and the child, "the course of action that your client pursued was to have absolutely no contact with the child for 15 weeks." The court continued, "And after 15 weeks of no contact I think what is likely going to be necessary when and if your client returns to the country is to have the Court evaluate the extent to which it will be in the child's best interest to resume contact, and at that point under what circumstances and with what therapeutic support to the child. I'm not prepared to make that order in the absence of any evidence that your client intends to return at any point in the near future. So I've articulated the basis for my decision. And the request to have . . . the supervision occur through a different individual or a different agency is denied."

Father's counsel was directed to prepare the written order, which was entered in November 2018. The order provides that Father's "request to suspend all visitation and contact between [Mother] and the [child], is hereby granted. [¶] In that regard, [Mother] is obligated to notify petitioner in a noticed pleading of her anticipated date of return to the United States. [¶] This suspension of contact and visitation . . . shall continue until further order of court and [Mother] has returned to the territorial United States and may only be modified pursuant to a request for order seeking to modify such based upon a showing of some material change in circumstances." Mother timely filed a notice of appeal. After Mother filed her opening brief on appeal, Father filed a motion to dismiss, which Mother has opposed.

## DISCUSSION

We have jurisdiction over Mother's appeal only if the orders she challenges are appealable. (*Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 696.) The rules of court require an appellant's opening brief to "explain why the order appealed from is appealable." (Cal. Rules of Court, rule 8.204(a)(2)(B).)

Mother challenges three orders on appeal: the order suspending visitation (suspension order); the order requiring her to notify Father in a noticed pleading of her anticipated date of return to the United States (notice order); and the order that the suspension order may be modified only pursuant to a request for order seeking modification based on a showing of a material change in circumstances (material change requirement). She argues that the suspension order is appealable as a postjudgment order under Code of Civil Procedure[4] section 904.1, subdivision (a)(2) and as a final custody

---

[4] Undesignated statutory references are to the Code of Civil Procedure.

6

order under section 904.1, subdivision (a)(1). She also argues that all three orders are appealable as orders granting injunctions under section 904.1, subdivision (a)(6). We are not persuaded.

A.    *The Suspension Order Is Not Appealable as a Postjudgment Order or Final Custody Order*

Section 904.1, subdivision (a)(2) permits the immediate appeal of an order made after an appealable judgment, but as we have explained, this does not mean that every postjudgment order is appealable. (*Stupp v. Schilders* (Mar. 25, 2016, A143186) [nonpub. opn.].) In particular, postjudgment temporary custody orders are not appealable, but are reviewable only by writ. (*Ibid.*; see also, *e.g.*, *Stupp v. Schilders* (Jan. 24, 2017, A148811) [nonpub. opn.].) Final determinations of custody are appealable as final judgments under section 904.1, subdivision (a)(1). (*Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1377-1378.)

Mother argues that the visitation order here is appealable because it has the "characteristics of a final visitation order." Yet, as Mother acknowledges, she explicitly requested temporary visitation orders, and the family court never stated that it would enter a final order. In fact, the family court characterized its order as temporary in pronouncing it from the bench and was clear that the order was not permanent but was instead preliminary to further proceedings that would include "testimony and evidence from the parties."

Mother identifies two respects in which the suspension order has the purported characteristics of a final order: modification of the order requires the filing of a request for order and a showing of a material change of circumstances. It is true that the modification of a final custody and visitation order typically requires the filing of a request for order and a showing of a material change of circumstances. (*Montenegro v. Diaz* (2001)

26 Cal.4th 249, 256.) But Mother cites no authority that either of those characteristics will transform an otherwise temporary visitation order into a final appealable order.

We begin with the requirement that the parties file a request for order if they seek to change the suspension order. We do not interpret this requirement as an indication that, contrary to the family court's pronouncement, the suspension order is final. As a general matter, parties in family court proceedings file requests for order when they seek to change existing orders, whether temporary or final. Ordinarily, we might expect that a temporary order would end at some defined point specified in the order, but the record in this case indicates that the court had no information as to when Mother would return to the United States. Lacking information about Mother's plans, and in light of evidence that the child was distressed by Mother's absence, the family court concluded that when and if Mother did return further proceedings would be required to determine whether it was in the child's best interest to resume visitation and under what circumstances any visitation should occur.

Mother claims that because no further action on custody or visitation is scheduled in the November 2018 order, the order is final. We disagree. The record suggests it would have been pointless for the court to schedule further action at that time. Mother had asked for orders to be made for the time when she was out of the country, and as we have noted, the court had no information as to when she might return. In addition, according to Father's declarations in response to Mother's request for order, pinning Mother down on dates was not easy. According to Father's declarations, Mother had been seeking to avoid participation in court-ordered mediation that had been scheduled for the end of February 2018. Mother cancelled the appointment,

8

and the mediation was rescheduled for March.  Again Mother cancelled, and the mediation was rescheduled for April.  Yet again Mother cancelled.  At that point, the court ordered the parties to each contact the mediation service within 24 hours to schedule the mediation on one of three dates, which Mother was authorized to attend by Skype from the Netherlands.  But several days after the deadline passed, she still had not made the required contact.  In these circumstances, the fact that the court did not set a date for further proceedings, but instead required that the parties file a request for order to modify the suspension order is not an indication that the suspension order is final:  it is simply an attempt by the family court to manage the litigation before it.

We find no merit in Mother's claim that the suspension order must be deemed final in view of the family court's statement that a showing of a material change in circumstances will be required for modification.  Nothing in the order purports to change the requirement that before making a *final* order as to custody and visitation (which the court stated this was not) "the family court must conduct an adversarial proceeding and ultimately make an award that is in 'the best interest of the child.' " (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1053.)  Nor does the order eliminate the requirement that in making such an order the court must not "arbitrarily deprive either parent from offering pertinent evidence bearing on the child's best interest, including evidence regarding the harm that may result from disruption of established patterns of care and emotional bonds." (*Id.* at p. 1051.)

In sum, in the circumstances here, there is no basis to characterize the order suspending visitation—which the court announced from the bench was

9

a temporary order—as a final order. Accordingly, it is not appealable as a final custody or visitation order.

B.    *None of the Challenged Orders Is an Order Granting an Injunction*

An injunction is a writ or order that requires a person to perform or refrain from performing a particular act. (*Luckett v. Panos* (2008) 161 Cal.App.4th 77, 84.)

In her opening brief on appeal, Mother contends—without citation to authority—that the challenged orders are injunctions. She simply asserts that the notice order and the material change requirement are injunctions because they impose requirements that do not currently exist in California law, and the suspension order is an injunction because it prohibits contact between Mother and the child.

We begin with the notice order and the material change requirement. Neither of them requires Mother to take any action or refrain from taking any action. As Father points out, Mother may elect not to return to the United States, and she retains discretion whether to seek a further custody or visitation order.

We turn now to the suspension order. Although the order temporarily prohibits Mother from having contact with her child, Mother presents no authority or argument to support treating this order as an appealable injunction. Treating a temporary suspension order as an injunction would vastly expand the universe of appealable orders, with the result that a host of nonappealable temporary visitation orders would become appealable, such as temporary visitation orders that reduce visitation time, or limit activities or restrict travel during visitation. For good reason, temporary visitation orders, like temporary custody orders, are reviewable only by writ: "The very nature of such orders compels the swiftest possible review of any challenge.

10

The writ process, not the appeal process, is the way to get that review."[5]

(*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 565.)

## DISPOSITION

The appeal is dismissed. Respondent shall recover his costs on appeal.

---

[5] Mother elected to appeal these November 2018 orders rather than file a writ petition. Even if Mother had requested that we treat her attempted appeal as a writ petition (and she has not), we would not be inclined to exercise our discretion to do so in the circumstances here. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401 [power to treat purported appeal as a writ petition should be exercised only in unusual circumstances].)

We note that although Mother's attorney had argued to the family court in March 2018 that it was "essential, starting now, for the child to continue his interactions with his mother," subsequent events and statements dispel any suggestion of urgency on Mother's part. The family court found that Mother did not take advantage of Father's March 2018 offer to facilitate weekly Skype calls with the child with the result that she had no contact with the child for the 15 weeks ending in late June 2018. Further, Mother's opening brief in this appeal was not filed until May 2020 as a result of multiple extensions (1 stipulated and 4 requested by her counsel) and the coronavirus emergency. In requesting extensions, Mother's counsel stated that Mother agreed to the extensions, and noted that the existing situation (that is, with the challenged orders in effect, and presumably with no contact between Mother and the child) was favorable to Father.

_____
Miller, J.

WE CONCUR:


_____
Kline, P.J.


_____
Stewart, J.


A156022, *Stupp v. Schilders*